UNITED STATES (RAYMOND v.). See Case No. 11,596.

## Case No. 16,125.

### UNITED STATES v. READ.

[2 Cranch, C. C. 159.] [1]

Circuit Court, District of Columbia. Dec. Term, 1818.

LARCENY OF BANK-NOTES—RESTORATION TO OWNERS.

The court will not order stolen bank-notes to be restored to the person from whom they were stolen, they having been received bona fide by innocent persons in the way of business.

Indictment [against Betty Read] for stealing bank-notes, the property of Mr. Nottingham. Some of the notes, which were identified, had been passed to sundry persons, who received them innocently and bona fide in the way of business. Verdict, "Guilty."

THE COURT (THRUSTON, Circuit Judge, absent) refused to order such notes to be given up to Mr. Nottingham.

## Case No. 16,126.

### UNITED STATES v. READ.

[2 Cranch, C. C. 198.] [1]

Circuit Court, District of Columbia. April Term, 1820.

CRIMINAL LAW—BREAKING STOREHOUSE—LARCENY.

Upon an indictment for feloniously breaking the storehouse of Cook & Clare, and taking therefrom goods of the value of more than four dollars, contrary to the act of Virginia of the 26th of December, 1792 (section 2), which takes away the benefit of clergy, the jury may find the prisoner guilty of simple larceny.

Indictment [against William Read] for feloniously breaking the storehouse of Cook & Clare, and taking therefrom goods of the value of more than four dollars. The jury having inquired whether they might find the prisoner guilty of simple larceny upon this indictment,

THE COURT (MORSELL, Circuit Judge, doubting) informed them that they might.

The jury accordingly found the defendant guilty of stealing the goods, but not of breaking the storehouse.

## Case No. 16,127.

### UNITED STATES v. READING.

[Hoff. Land Cas. 18.] [2]

District Court, N. D. California. June Term, 1853. [3]

MEXICAN LAND GRANTS—CONFIRMATION.

When the conditions of a grant have been performed cy prés, though no approval has been

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

[3] [Affirmed in 18 How. (59 U. S.) 1.]

---

given by the departmental assembly, the claim is entitled to confirmation.

[Claim by Pearson B. Reading for the Rancho Buenaventura, embracing a tract of six square leagues. Confirmed by the board of land commissioners, and appealed by the United States.]

S. W. Inge, U. S. Dist. Atty.
V. E. Howard, for appellee.

HOFFMAN, District Judge. Two objections to the confirmation of this claim are urged by the district attorney: (1) That the claimant had no capacity to take, being a foreigner. (2) That the conditions of the grant have not been substantially complied with.

First. The grant itself recites that the claimant was a naturalized Mexican citizen, at the time it issued, and it is shown that letters of naturalization were, in fact, issued to him. No fraud in obtaining them is pretended to have been committed by the claimant. Whether or not he was strictly entitled to receive them by Mexican law, is immaterial, for that question having been passed upon by Mexican authority, and the claimant in fact naturalized, it cannot now be contended that he was not, at the time of receiving his grant, a naturalized Mexican citizen. It is proper to observe that the proofs on this point were only furnished after the district attorney had taken his objection.

Second. With respect to the performance of the conditions, the proof shows that in August, 1845, less than one year after the date of the grant, the claimant went on the land, took possession, and selected a site for his house, which he left his servant to build. It was completed within a year, and inhabited until the person in charge was driven out by hostile Indians and the house burnt. A crop of wheat was raised on the land in 1845, and another in 1846; the latter was burnt with the house.

During the year 1845, Major Reading appears to have been called into service by General Sutter, in consequence of the political disturbances which then agitated the country. In 1846, he joined the Americans under Fremont, and continued in active service during the greater part of the year. In 1848, he returned to his rancho and has ever since resided on and cultivated it.

Under these circumstances, we look in vain for evidence of a willful abandonment of his grant, or even a neglect to perform substantially its conditions. The object of the Mexican government in making grants undoubtedly was to secure the cultivation and settlement of their vacant lands, and that object was attained in this case. Even if the conditions of the grant be construed to require the personal residence of the grantee on the land, the excuses shown by him for his omission to do so, are such as should in equity be received. In the year 1845 he was unex-